UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK VASQUEZ,<br><br>  Plaintiff,<br><br>v.<br><br>CEBRIDGE TELECOM CA, LLC, et al.,<br><br>  Defendants. | Case No. 21-cv-06400-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 12 |

## I.  INTRODUCTION

Plaintiff Nick Vasquez, individually, as a private attorney general, and on behalf of a putative class of other customers similarly situated, alleges that Defendants Cebridge Telecom CA, LCC and Altice, USA, Inc., doing business as Suddenlink Communications (collectively, "Suddenlink" or "Defendants"), engaged in false advertising by failing to disclose a "Network Enhancement Fee" for internet services, and misrepresenting that the fee is a tax or government regulation.  Vasquez asserts claims under California law pursuant to the Consumer Legal Remedies Act, False Advertising Law and Unfair Competition Law seeking public injunctive relief, declaratory relief and restitution.

Now pending is Suddenlink's motion to compel the entirety of the action to arbitration subject to an arbitration agreement that prohibits non-individualized relief.  Docket No. 12.  In the alternative, Suddenlink argues Plaintiff Vasquez lacks Article III standing to bring this action.  Docket No. 23.  For the following reasons, the Court **DENIES** Suddenlink's motion to compel arbitration and finds that Plaintiff Vasquez has Article III standing to pursue this action.

## II. BACKGROUND

A. Summary of Allegations

The operative complaint alleges that Suddenlink has engaged, and continues to engage, in a false advertising scheme in California by publicly advertising specific flat monthly rates for its internet service plans for a specified time period, but then charging "higher monthly rates during that period via a disguised and fabricated extra charge on the bill (which Suddenlink calls the 'Network Enhancement Fee')." Docket No. 22 ("Second Amended Complaint" or "SAC") ¶¶ 1-2. The SAC alleges the "Network Enhancement Fee" was concocted by Suddenlink as a means to covertly increase customers' rates, including during their advertised and promised fixed-rate promotional period. SAC ¶¶ 1, 23.

Furthermore, the SAC alleges that Suddenlink does not disclose that it can increase customers' monthly service rates, even during a promised fixed-rate promotional period, by increasing the amount of the Network Enhancement Fee. *Id.* ¶¶ 23, 30-38. For example, in February 2019, Suddenlink allegedly added "a new $2.50 per month disguised double-charge for internet service, which it buried in a section of the bill with taxes and government fees," and later increased that fee to "$3.50 per month for California subscribers." *Id.* ¶ 2. In the event that a customer notices that they have been charged the Network Enhance Fee and contacts Suddenlink to inquire about the fee, Suddenlink agents allegedly "falsely tell the customer that the Fee is a tax or government fee or is otherwise out of Suddenlink's control" when, in "actuality, the Network Enhancement is not a tax or government fee. *Id.* ¶¶ 5-6, 40-46. Suddenlink's false and misleading statements about pricing allegedly appear in advertisements on its website and in its California retail stores where customers can sign up for Suddenlink services, as well as online video advertisements via YouTube, Facebook, and Twitter. *Id.* ¶¶ 19, 25–33. Suddenlink's false advertising is allegedly ongoing. *See* SAC ¶¶ 100, 108, 116, 122, 133, 138.

Plaintiff brings claims individually, as a private attorney general, and on behalf of a putative class consisting of "[a]ll current and former Suddenlink customers who were charged a 'Network Enhancement Fee' on their bill for Suddenlink internet services received in California within the applicable statute of limitations." *Id.* ¶ 79. Plaintiff brings clams under the Consumer

1  Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*, False Advertising Law

2  ("FLA"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and Unfair Competition Law ("UCL"), Cal.

3  Bus. & Prof. Code § 17200 *et seq.* SAC ¶¶ 91-140. The SAC seeks public injunctive relief to

4  stop Suddenlink's allegedly ongoing false and deceptive price advertising to the general public

5  under the UCL, FAL, and CLRA. SAC ¶¶ 8, 109, 123, 139, Prayer, § A. Separately but still

6  pursuant to his claim under the UCL, FAL and CLRA, Plaintiff seeks, on behalf of himself and the

7  proposed class, restitution, damages and a private injunction prohibiting Suddenlink from

8  continuing to charge the Network Enhancement Fee to him and the class of current subscribers

9  who signed up for service after being induced by Suddenlink's allegedly misleading pricing

10  scheme. SAC ¶¶ 8, 110, 124, 140, Prayer, § C.

11  B.  Procedural Background

12  Plaintiff filed this action in Humboldt County Superior Court on May 3, 2021, and

13  Defendants were served with the Summons and Complaint on July 20 and 21, 2021, respectively.

14  Docket No. 1 ("Notice of Removal") at 2. Defendants timely filed a notice of removal under 28

15  U.S.C. § 1446(b) on August 18, 2021. *Id.* Defendants assert this Court has jurisdiction pursuant

16  to the Class Action Fairness Act, 28 U.S.C. § 1332, because the putative class action has 100 or

17  more class members (allegedly 20-30,000 class members, *id.* at 3), the aggregate amount in

18  controversy exceeds $5 million (*id.* at 5-6), and there is minimal diversity (Plaintiff is a citizen of

19  California, Defendants Altice and Cebridge are Delaware corporations with their principal place of

20  business in New York, *id.* at 3-4).

21  Now pending is Defendants' motion to compel arbitration pursuant to the arbitration

22  agreement Plaintiff entered into and to stay these proceedings during the pendency of arbitration.

23  Docket No. 12. Defendants' reply brief on this motion challenged, for the first time, Plaintiff

24  Vasquez's standing to pursue public injunctive relief in this action under Article III. Docket No.

25  18. At the hearing on Defendants' motion to compel arbitration, the Court allowed Plaintiff leave

26  to amend his complaint on the limited ground to address issues related to his Article III standing to

27  pursue public injunctive relief. Docket No. 21. Accordingly, Plaintiff filed the operative Second

28  Amended Complaint on October 25, 2021. *See* SAC. Defendants were granted leave to file a

3

supplemental brief in response to the SAC regarding Plaintiff's standing to bring this action, Docket No. 21, which they did, Docket No. 23.

In this order, the Court addresses Defendants' arguments on Plaintiff's standing and in support of their motion to compel arbitration.

C. <u>Relevant Arbitration Provisions</u>

Suddenlink moves to compel arbitration based on its Residential Services Agreement ("RSA"), which Plaintiff Vasquez agreed to when he signed up for Suddenlink's services online. The parties agree that they entered into the RSA.  Docket No. 12 ("Motion to Compel") at 3; Docket No. 14 ("Opposition") at 5.

The relevant provisions of the arbitration agreement upon which Suddenlink moves the Court to compel arbitration are contained in a section titled "Binding Arbitration."  Docket No. 12-5 ("RSA") § 24. The "Binding Arbitration" provision provides:

> Any and all disputes arising between You and Suddenlink, including its respective parents, subsidiaries, affiliates, officers, directors, employees, agents, predecessors, and successors, shall be resolved by binding arbitration on an individual basis in accordance with this arbitration provision. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:
>
> - Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;
>
> - Claims that arose before this or any prior Agreement,
>
> - Claims that may arise after the termination of this Agreement. . . .
>
> **YOU AGREE THAT BY ENTERING INTO THIS AGREEMENT, YOU AND SUDDENLINK EACH WAIVE THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTION.**

*Id.* (Emphasis in the original).  The RSA also includes an express provision for "Waiver of Class and Representative Actions," which states:

> **YOU AGREE TO ARBITRATE YOUR DISPUTE AND TO DO SO ON AN INDIVIDUAL BASIS; CLASS, REPRESENTATIVE, AND PRIVATE ATTORNEY GENERAL ARBITRATIONS AND ACTIONS ARE NOT PERMITTED.** You and Suddenlink agree that each party may

>   bring claims against the other only in Your or its individual capacity and may not participate as a class member or serve as a named plaintiff in any purported class, representative, or private attorney general proceeding. This arbitration provision does not permit and explicitly prohibits the arbitration of consolidated, class, or representative disputes of any form. In addition, although the arbitrator may award any relief that a court could award that is individualized to the claimant and would not affect other Suddenlink account holders, neither You nor Suddenlink may seek, nor may the arbitrator award, non-individualized relief that would affect other account holders. Further, the arbitrator may not consolidate or join more than one person's claims unless all parties affirmatively agree in writing.
>
>   If any of the prohibitions in the preceding paragraph is held to be unenforceable as to a particular claim, then that claim (and only that claim) must be severed from the arbitration and brought in court. In that instance, or any instance when a claim between You and Suddenlink proceeds to court rather than through arbitration, You and Suddenlink each waive the right to any trial by jury through this Agreement.

*Id.* § 24(g) (emphasis in the original).

### III.     LEGAL STANDARDS

A.     Subject Matter Jurisdiction and Standing (Rule 12(b)(1))

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547 (2016). These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element." *Spokeo II,* 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

"It is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed

5

supportive of plaintiff's standing." *Warth*, 422 U.S. at 501; *see also Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the court may consider "the complaint and any other particularized allegations of fact in affidavits or in amendments to the complaint").

B.  Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that written provisions in contracts involving commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he FAA was designed to promote arbitration" and accordingly there is "a liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011). "The final clause of § 2, its saving clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015) (internal quotation marks omitted).

Accordingly, the California Supreme Court has found that "[a]greements to arbitrate claims for public injunctive relief under the CLRA, the UCL, or the false advertising law are not enforceable in California." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 956 (2017). In particular, an arbitration agreement that purports to waive the right to seek public injunctive relief violates California Civil Code § 3513, which provides that 'a law established for a public reason cannot be contravened by a private agreement.' *Id.* at 961. Claims for public injunctive relief include "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *Id.* at 951. The Ninth Circuit has ruled that the FAA does not preempt *McGill*. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 822 (9th Cir. 2019).

IV.  **ANALYSIS**

A.  Plaintiff Vasquez's Standing under Article III to Pursue Public Injunctive Relief

As a threshold matter, Suddenlink argues that Plaintiff Vasquez lacks Article III standing to seek a public injunction directed at Suddenlink's advertising regarding the "Network

6

Enhancement Fee," and thus the Court lacks subject matter jurisdiction over this action. Docket No. 23 ("Suppl. Br.") at 2.

Under the three-part test for standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To establish standing to seek prospective injunctive relief in particular, a plaintiff must demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" *Bates v. UPS, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Under Ninth Circuit precedent, in cases alleging false advertising or labeling, the plaintiff must sufficiently demonstrate the intent to purchase the product or service at issue in the future in order to have standing to seek injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (holding that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm"). In "resolv[ing a] district court split in favor of plaintiffs seeking injunctive relief" the *Davidson* Court observed that a plaintiff could have standing to challenge false advertising in cases where "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," as well as in cases where "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." 889 F.3d at 969–70. The Court found that the plaintiff in *Davidson* had standing to challenge Kimberly-Clark's allegedly false advertising of its "flushable" wipes based on the harm of her "inability to rely on the validity of the information advertised on Kimberly–Clark's wipes despite her desire to purchase truly flushable wipes." *Id.* at 971.

Suddenlink argues that Vasquez, unlike the plaintiff in Davidson, is not at risk of being misled in the future by Suddenlink's disclosures regarding the Network Enhancement Fee because Vasquez is (1) aware of the fee and (2) currently paying it each month with full knowledge that it will be charged. Suppl. Br. at 2. In addition, Suddenlink argues that Plaintiff Vasquez concedes that Suddenlink does *now* disclose the "existence and amount" of the fee to future online purchasers. *Id.* (citing SAC ¶ 38 n.5). Sudden link furthers argues that "[u]nlike the plaintiff in *Davidson* or similar products cases, Vasquez need not purchase Suddenlink service again to know whether that remains true" and that even if "that disclosure is inadequate for other purchasers, [Vasquez] himself knows where to look, and he would be free to decline to go through with the purchase if he did not wish to pay the fee." *Id.* at 6.

Suddenlink's argument is unavailing. The SAC demonstrates Vasquez desires to purchase Suddenlink's fixed-rate promotional price services in the future *if* he were confident that Suddenlink had ceased its allegedly false advertising practices:

> Mr. Vasquez has a legal right to rely now, and in the future, on the truthfulness and accuracy of Suddenlink's representations and advertisements regarding its internet service plan prices. Mr. Vasquez believes that he was given the services Suddenlink promised him—just not at the price Suddenlink promised and advertised to him. Mr. Vasquez's 12-month fixed-price promotional period for his internet service plan expired in September 2021. **He continues to be a Suddenlink internet subscriber. He has limited options for internet where he lives in Arcata, California. Mr. Vasquez would sign up for a different service plan package from Suddenlink, such as one with a faster internet speed (Mr. Vasquez is currently subscribed to Suddenlink's slowest internet-only plan; he is also not currently subscribed to any of Suddenlink's other services such as TV and phone), and he would sign up for another fixed price period (e.g., where Suddenlink promises a discounted and fixed price for service for a 12-month period of time), if he were confident in Suddenlink's advertised and quoted service prices. In particular, Mr. Vasquez wants to be confident that the advertised and quoted price for services is the true and full price for services (i.e., that it includes all applicable monthly service charges such as the Network Enhancement Fee).** *See infra* Prayer § A.1. **Mr. Vasquez also wants to be confident that Suddenlink is not going to increase the service price during any promised fixed-price period, as has been its practice, by increasing any discretionary monthly service charges such as the Network Enhancement Fee.** *See infra* Prayer § A.2. **And, if Suddenlink introduces any new or invented discretionary monthly internet service charge (like it did with the Network Enhancement Fee), Mr. Vasquez wants to**

8

> **be confident that Suddenlink will include the amount of that service charge in the advertised and quoted service price.** *See infra* Prayer § A.4.

SAC ¶ 77 (emphasis added).

The SAC demonstrates that Vasquez is similarly situated to the plaintiff in *Davidson* who had standing to pursue her claims: Vasquez is harmed by his "inability to rely on the validity of the information advertised" by Suddenlink "despite [his] desire to purchase [a] truly [fixed rate promotional period of internet service]." 889 F.3d at 971. Although he is a current subscriber, he would like to purchase other services from Suddenlink in the future. Suddenlink argues Vasquez need not actually *purchase* Suddenlink's services in the future in order to ascertain whether they have ceased their allegedly deceptive practices by making much of Vasquez's "conce[ssion]" that he is now aware of Suddenlink's disclosure of the Network Enhance Fee. Suppl. Br. at 2 (citing SAC ¶ 38 n.5). This argument relies on a selective and incomplete reading of the relevant footnote. Vasquez concedes that, "Suddenlink slightly revised part of the online purchase process to now mention the existence and amount of the Network Enhancement Fee" but explains that "nowhere in the online purchase process is it disclosed that the Fee may be increased in the middle of the supposedly fixed-price promotional period." SAC ¶ 38 n.5. Thus, Suddenlink's argument that Plaintiff cannot possibly by misled in the future because he can obtain the information that he alleges was misleading does not hold. While Plaintiff Vasquez may now know where to look find the disclosure of the Network Enhancement Fee, that disclosure does not suffice to provide him with full and accurate information about what to expect regarding Suddenlink's pricing practices during the term of his subscription, so he remains harmed by his inability to rely on Suddenlink's advertising. Moreover, Vasquez's request for public injunction does not *only* seek to enjoin Suddenlink for failing to disclose a "Network Enhancement Fee" but from "advertising or quoting an internet service plan if that prince does not *any* applicable monthly service charge" regardless of what it is labeled. SAC, Prayer § A.2.

Thus, Plaintiff Vasquez has standing to seek public injunctive relief because he has adequately alleged injury-in-fact under *Davidson*. *See Davidson,* 889 F.3d 969-70; *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 531 (N.D. Cal. 2018) (noting that plaintiff can

establish standing for injunctive relief claims if she alleges that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"); *Eiess*, 404 F. Supp. 3d at 1258 (observing that plaintiff may seek public injunctive relief because she "remains a USAA customer and nothing indicates that she wants to stop being a customer" and "thus [she] has standing under *Davidson*.").

B. <u>Suddenlink's "Binding Arbitration" and "Waiver of Class and Representative Actions" Provisions Violate *McGill*</u>

The "Binding Arbitration" and "Waiver of Class and Representative Actions" provisions of Suddenlink's RSA are unenforceable as to any claim for public injunction under *McGill* (and confirmed in *Blair)* because they eliminate Plaintiff's right to seek a public injunction in any forum, under any federal or California law. RSA §§ 24 ("This agreement to arbitrate is intended to be broadly interpreted. It includes . . . [c]laims arising out of or relating to any aspect of the relationship between us"), 24(g) ("YOU AGREE TO ARBITRATE YOUR DISPUTE AND TO DO SO ON AN INDIVIDUAL BASIS; CLASS, REPRESENTATIVE, AND PRIVATE ATTORNEY GENERAL ARBITRATIONS AND ACTIONS ARE NOT PERMITTED. . . [N]either You nor Suddenlink may seek, nor may the arbitrator award, non-individualized relief that would affect other account holders." *See McGill,* 2 Cal. 5th at 951; *Blair*, 928 F.3d at 822.

Suddenlink concedes that the RSA provisions are unenforceable as to claims for public injunction under *McGill*. Suddenlink does not argue otherwise in its briefs.[1] Instead, Suddenlink contends that Plaintiff "is seeking *private* relief" so "*McGill* does not apply." Motion to Compel at 12 (emphasis added); Docket No. 18 ("Reply") at 1 ("The only disputed issue presented to this Court is whether Vasquez seeks an injunction on behalf of the 'general public' within the meaning of *McGill*"). As explained below, the Court rejects Suddenlink's argument.

---

[1] Suddenlink raises the contention that *McGill* is preempted by the FAA, but acknowledges that the Ninth Circuit squarely rejected this argument in *Blair*, 928 F.3d at 830-31 and that this Court is bound by *Blair*. Motion to Compel at 17. Suddenlink states that it raises this argument only "to preserve it for *en banc* Ninth Circuit or Supreme Court review." *Id.* The Court agrees that Suddenlink's position if foreclosed by *Blair* and, thus, need not address it further.

10

C.      The SAC Seeks "Public Injunctive Relief" Within the Meaning of *McGill*

Suddenlink argues that the *McGill*-rule, rendering the RSA's binding arbitration and waiver of class and representative actions provision unenforceable, does not apply here because Plaintiff is primarily seeking individual relief rather than injunctive relief truly directed at the general public. Motion to Compel at 12-16. Thus, Suddenlink contends that the Court should compel Plaintiff's claims to arbitration. *Id.* Suddenlink's argument lacks merit: the SAC clearly seeks public injunctive relief within the meaning of *McGill*.

In *McGill*, the plaintiff opened a credit card account with Citibank and purchased a credit protector plan under which Citibank agreed to defer or credit certain amounts on her credit card account when certain qualifying events took place (*e.g.*, long-term disability, unemployment). 2 Cal. 5th at 952. The plaintiff submitted a claim to Citibank under the plan after she lost her job, but did not receive the protection she purchased. *Id.* She filed suit against Citibank under the UCL, CLRA and FLA based on Citibank's allegedly unlawful marketing of the plan and handling of her claim. *Id.* at 953. For relief, the plaintiff asked, *inter alia*, for "an order requiring Citibank 'to immediately cease [its] acts of unfair competition and enjoining [Citibank] from continuing to conduct business via the unlawful, fraudulent or unfair business acts and practices complained of . . . and from failing to fully disclose the true nature of its misrepresentations.'" *Id.* at 957. The *McGill* Court held that these were requests for public injunctive relief. *Id.* at 960-61.

The California Supreme Court explained that "public injunctive relief" is "relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten injury to the general public," whereas private injunctive relief is "[r]elief that primarily 'resolve[s] a private dispute' between the parties . . . and rectifies individual wrongs. . . and that benefits the public, if at all, only incidentally." *Id.* at 955; *see also Blair*, 928 F.3d at 831 n.3 ("[Defendant] alternatively argues that the *McGill* rule does not apply because [Plaintiff's] requested relief does not amount to a public injunction. Not so. [Plaintiff] seeks to enjoin future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public."); *Hodges v. Comcast Cable Commc'ns, LLC*, 12 F.4th 1108, 1115 (9th Cir. 2021) ("[P]ublic injunctive relief within the meaning of *McGill* is limited to forward-looking injunctions that seek to prevent future

11

violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party.").

In particular, the statutory schemes set out in "the UCL, the CLRA, and the false advertising law" are explicitly designed to provide for "public injunctive relief" that is "[b]y definition" "primarily for the benefit of the general public." *McGill*, 2 Cal. 5th at 961 (quotation omitted). Indeed, in *Hodges,* the Ninth Circuit observed that "[t]he paradigmatic example [of public injunctive relief] would be the sort of injunctive relief sought in *McGill* itself, where the plaintiff sought an injunction against the use of false advertising to promote a credit protection plan." 12 F.4th at 1115 (citation omitted).

Here, Plaintiff's SAC seeks this "paradigmatic example" of public injunctive relief: to enjoin Suddenlink from falsely advertising its internet service plans to the general public via public injunctions under the UCL, FAL, and CLRA – the very same statutes and type of relief at issue in *McGill*. *See*, *e.g.*, SAC ¶ 8 ("Plaintiff Nick Vasquez brings this lawsuit individually and as a private attorney general seeking public injunctive relief to protect the general public by putting an end to Suddenlink's unlawful advertising scheme."). The SAC alleges that Suddenlink violated the CLRA because "Suddenlink's misrepresentations deceive and have a tendency to *deceive the general public*," that "Suddenlink intentionally deceived Plaintiff and the Class, and *continues to deceive the general public*, by [m]isrepresenting the prices of Suddenlink's internet service plans by advertising or quoting an internet service plan price that does not include applicable monthly service charges such as the Network Enhancement Fee," and thus, "Plaintiff, on behalf of himself and as a private attorney general, seeks public injunctive relief under the CLRA *to protect the general public* from Suddenlink's false advertising and misrepresentations." SAC ¶¶ 100(a), 130, 109 (emphasis added).

Moreover, the SAC specifically seeks four public injunctions addressing the various aspects of Suddenlink's false advertising, stemming from his CLRA, FAL and UCL claims. Paragraph A of the Prayer for Relief in the SAC states:

> In order to prevent injury to the general public, Plaintiff Nick Vasquez individually and as a private attorney general, requests that the Court enter a public injunction against Suddenlink under the

CLRA, FAL, and UCL as follows:

1. Permanently enjoin Suddenlink from advertising or quoting an internet service plan price if that price does not include any applicable monthly service charges such as the Network Enhancement Fee;

2. Permanently enjoin Suddenlink from advertising or representing that the prices of its internet service plans are fixed and will not increase during a specified promotional period, when in fact Suddenlink reserves the right to increase the service price during that period by increasing discretionary monthly service charges such as the Network Enhancement Fee;

3. Permanently enjoin Suddenlink, including Suddenlink's sales and customer service agents, from stating to members of the public that the Network Enhancement Fee is any of the following: (a) a tax; (b) a government fee; (c) a regulatory fee; or (d) a charge over which Suddenlink has no control; and

4. Permanently enjoin Suddenlink from inventing a bogus internet service fee (such as, but not limited to, the "Network Enhancement Fee") out of whole cloth and then not including that fee amount in the advertised and quoted price of the internet service plan, when in fact the fee is an arbitrary and disguised double-charge for the internet service promised in the plan.

SAC, Prayer § A.1-4. In *McGill* itself, the California Supreme Court concluded that allegations of false advertising less detailed than those here—for example that the defendant "'continue[s] to violate' the UCL by selling the Plan 'with advertising that includes false, misleading or deceptive information"—along with requests to enjoin such advertising, established that the plaintiff in that case sought public injunctive relief. 2 Cal. 5th at 956-57. Plaintiff's detailed requests for relief, then, certainly qualify as public injunctions under *McGill*.

Suddenlink mostly ignores Plaintiff's detailed allegations of unlawful advertising and misrepresentations aimed at the public, and instead hones in on the fact that Plaintiff *also* requests restitution, damages and a private injunction enjoining Suddenlink from continuing to charge Plaintiff and class members the Network Enhancement Fee to argue that "the primary motivation behind his lawsuit is to obtain monetary relief" and private relief that is not covered by the *McGill* rule. Motion to Compel at 14; *see also id.* at 15("Vasquez cannot credibly contend that what he really wants is for Suddenlink to change its advertising going forward rather than to stop charging the Network Enhancement Fee."). Suddenlink, however, cites no authority that a plaintiff seeking private relief (including for a proposed class) *in addition to* public injunctive relief renders the

13

*McGill* rule inapplicable to a plaintiff's claims for public injunctive relief.

Indeed, Suddenlink could not do so because in *McGill* itself the California Supreme Court established that the plaintiff's requests to enjoin alleged false advertising constituted requests for public injunctive relief that were not subject to arbitration, and acknowledged that the plaintiff's "complaint also requests compensatory, monetary and punitive damages, and 'injunctive relief in the form of restitution and/or disgorgement,'" which "do not constitute public injunctive relief." 2 Cal. 5th at 957 n.1. That the *McGill* plaintiff brought claims for private relief *in addition* to claims for public injunctive relief did <u>not</u> preclude application of the rule that the requests for public injunctive relief had to be litigated in court. Indeed, courts regularly examine which claims are arbitrable and which are not, and conduct a severability analysis to analyze where claims should be split between court and arbitral processes. *See e.g., Blair*, 928 F.3d at 831; *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1260 (N.D. Cal. 2019) ("These claims may be litigated in court only to the extent Ms. Eiess is seeking public injunctive relief. . . Notably, Ms. Eiess is also asking for monetary relief with respect to these claim. . . The claims for monetary relief are subject to arbitration because the *McGill* rule does not apply to these claims."). Importantly, the court in *McGill* did not assess the primary motive of the litigation as a whole.

Suddenlink argues that the Ninth Circuit's recent decision in *Hodges* supports its theory that Plaintiff here cannot arbitrate its requests for public injunctive relief because he seeks private relief as well. Motion to Compel at 13. *Hodges*, however, fails to provide the support Suddenlink claims it does.

*Hodges* expressly reiterated the holdings in *McGill* and the Ninth Circuit's confirmation that *McGill* is not preempted by the FAA in *Blair*, and makes clear that any other private relief sought by the plaintiff, including other forms of injunctive relief, has no bearing on a court's determination of whether the requested relief includes a public injunction within the meaning of *McGill*. 12 F.4th at 1116 n.4 (recognizing that the *McGill* rule applied to certain claims in *Blair*, but not to other claims that the *Blair* plaintiff raised which did not seek public injunctions). Moreover, as previously explained, *Hodges* labeled the *McGill* plaintiff's forward-looking requests for injunctions of advertising practices under the CLRA, UCL and FLA as the

14

1   "paradigmatic examples" of public injunctive relief – the very same public relief requested and
2   causes of actions at issue in this case.  No part of the analysis in *Hodges* casts doubt on the
3   assessment that Plaintiff here seeks public injunctive relief: the requests for public injunctive relief
4   here are expressly aimed at enjoining Suddenlink's false advertising to the general public.  The
5   Court in *Hodges* found that the complaint there failed to seek *public* injunctive relief because *all*
6   *seven* of the injunctions sought were sought on behalf of "cable subscribers of Comcast," and
7   reasoned because "these requests on their face stand to benefit only Comcast 'cable subscribers'—
8   i.e., by definition they will only benefit a 'group of individuals similarly situated to the plaintiff.'"
9   12 F.4th at 1121 (citation omitted).  None sought public injunctive relief.  By contrast, the requests
10  for public injunctive relief in the SAC here stand to benefit *the public* "on their face;" the requests
11  for public injunction are not limited to serving only *existing customers*, which the *Hodges* court
12  found was insufficient to constitute *public* injunctive relief.  *Id.* at 1121; SAC, Prayer § A.1-4.
13      Thus, the Court holds that the SAC seeks public injunctive relief within the meaning of
14  *McGill*, and, thus, the arbitration provisions are unenforceable as to those claims.  This is true
15  even though Plaintiff here seeks private relief in addition to public injunctive relief.

16  D.   The Arbitration Agreement's Severability Clause Requires the Entirety of Plaintiff's
17       Claims to Proceed in this Court

18      "Parties are welcome to agree to split decision making between a court and an arbitrator"
19  by "requiring the arbitrator to adjudicate liability first" and "carv[ing] out only the potential public
20  injunctive remedy" for a court's determination separately.  *Blair*, 928 F.3d at 831.  "To sever in
21  this way, however, the parties' agreement must do so precisely."  *Lag Shot LLC v. Facebook, Inc.*,
22  No. 21-CV-01495-JST, 2021 WL 2660433, at *9 (N.D. Cal. June 25, 2021).  In *Blair*, the court
23  found that the reference in the contract's clause to the severance of a "claim for relief" required the
24  court to sever the *entire claim*, not just the remedy.  *Id.* At 830-31.  "A 'claim for relief,' as that
25  term is ordinarily used, is synonymous with 'claim' or 'cause of action.'"  *Id.*; *see also* Fed. R.
26  Civ. P. 8(a) (using "claim" and "claim for relief" synonymously, but using "demand for relief
27  sought" to mean the form or type of requested remedy).
28      Suddenlink's arbitration provision, including its severability provision, is analogous to the

15

*Blair* arbitration provision. The Waiver of Class and Representative Actions provision prohibits Plaintiff Vasquez from seeking public injunctive relief in arbitration because any arbitration must be conducted on an "individual basis," and the arbitrator is prohibited from awarding "non-individualized relief that would affect other account holders." RSA § 24(g). The next paragraph in Section 24(g) contains a severance clause similar to the one in *Blair*: "If any of the prohibitions in the preceding paragraph is held to be unenforceable as to a particular *claim*, then that *claim* (and only that *claim*) must be severed from the arbitration and brought in court." *Id.* (emphasis added). Claims, not specific forms of relief, are severable.

Vasquez seeks public injunctive relief under each of the three claims in his complaint—California's false advertising law, unfair competition law and Consumer Legal Remedies Act. Therefore, the class action waiver provision of the arbitration agreement is unenforceable as each of those claims. *See supra* Analysis § C. The private remedies sought by Plaintiff flow from the same *claims*. Thus, pursuant to the arbitration agreement's severability clause, Vasquez must litigate the *entirety* of each of those *claims* before this Court, including his requests for restitution, declaratory relief and injunctive relief for himself and the putative class. *See Blair,* 928 F.3d at 831. Suddenlink does not contest this reading of the severability provision and makes no argument to the contrary. Accordingly, there is no basis for the Court to compel any portion of the claims in Plaintiff's SAC to arbitration.

Finally, because there is no basis for the Court to compel any portion of Plaintiff's claims to arbitration, the Court need not address Suddenlink's request to stay proceedings pending arbitration.

///

///

///

///

///

///

///

## V. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff Vasquez has standing to pursue this action for public injunctive relief and **DENIES** Suddenlink's motion to compel arbitration.

This order disposes of Docket No. 12.

**IT IS SO ORDERED**.

Dated: November 3, 2021

_____
EDWARD M. CHEN
United States District Judge